**MIMS v. SELTZER et ux.**

**No. 3728.**

Court of Civil Appeals of Texas. Beaumont.

Oct. 19, 1940.

Rehearing Denied Oct. 23, 1940.

974

Xavier Christ and B. C. Johnson, both of Port Arthur, for appellant.

Kemper, Hicks & Cramer, of Houston, for appellee.

O'QUINN, Justice.

This is an appeal from an order of the 58th district court of Jefferson County, Texas, sustaining a plea of privilege.

Appellant, Mims, as surviving husband and sole heir of Nell Mims, brought this suit for damages against appellees, I. Seltzer and his wife, Mrs. I. Friedman Seltzer, residents of Dallas, Texas, alleging that while he and his wife were riding as guests of Mrs. Friedman, now Mrs. Seltzer, in her automobile, through the negligence of Mrs. Friedman, his wife, Nell Mims, sustained injuries resulting in her death.

Appellees filed in due form their plea of privilege to be sued in Dallas County, Texas, the admitted county of their residence. Appellant duly filed his controverting affidavit making his original petition a part of same, and made other allegations supporting venue in Jefferson County under Section 9 of Article 1995, R.S.1925, in effect that the acts of Mrs. Friedman just prior to the occurrence causing the death of Mrs. Mims amounted, in law, to the commission of a crime or trespass.

On a hearing of the plea and controverting affidavit, the court sustained the plea of privilege in his judgment finding and stating that as a matter of law the evidence did not raise the issue of gross negligence on the part of Mrs. Friedman. Appellant brings this appeal.

The facts are few and without dispute. The parties involved all lived in Port Arthur, Texas, at the time of the occurrence. About 10:30 P. M. on May 9, 1939, Mr. and Mrs. Neil Mims, and Mrs. Segal were guests of Mrs. I. Friedman, a widow, on her invitation taking a pleasure ride in her automobile in north Port Arthur. They were riding in a V-8 Ford Sedan which was practically new, and in prime condition. Mrs. Friedman (now Mrs. Seltzer) was driving and Mrs. Mims was in the front seat with Mrs. Friedman. The others, Mr. and Mrs. Segal and appellant, Mims, were in the back seat. In the course of the driving they came upon what is known as the "Kitchen Road" which ran westwardly to its intersection with the "Old Port Arthur-Beaumont" highway. The Kitchen Road had its terminus in the "Old Port Arthur-Beaumont" highway intersecting it at right angles. The highway ran practically north and south and parallel with and adjacent to the west line of a railroad right of way. The rail track is some four or five feet above the level of the Kitchen Road, and the road crossed the track at grade with inclines on either side. There was nothing to obstruct the view either way in approaching the track. The Beaumont-Port Arthur highway ran some fifteen feet from the railway parallel with the track and the crossing of the Kitchen Road upon which the parties were traveling crossed the track at right angles and continued some fifteen feet to intersect the highway and there was a way turned to the right and to the left after making the track crossing so as to go into the Beaumont-Port Arthur highway either north toward Beaumont or south toward Port Arthur. There was a water ditch along the west side of the highway some two or three feet deep and on the west side of the ditch approximately opposite the center line of the Kitchen Road, there was a guy wire extending upward to the south at an angle of some 45 degrees to a light pole of the electric line along the west side of the right of way. The automobile was traveling at about ten miles per hour as it crossed the railway track and came down the incline toward the Beau-

mont-Port Arthur highway. The lights of the car clearly disclosed the highway and surrounding conditions. If one after crossing the track continued straight ahead he would land in the ditch above mentioned—to avoid this the road curved to the right and also to the left so that any one could travel from the Kitchen Road onto and into the highway going either north or south. Appellant who was riding in the back seat observing that Mrs. Friedman was proceeding in a straight line after crossing the track toward the ditch, and was not making any attempt to turn either way, or to stop the car warned her that she was going to run into the ditch whereupon she says she became excited, lost control of the car, and it ran into the ditch, striking the guy wire on the opposite edge of the ditch which threw the car backward catapulting Mrs. Mims through the windshield of the car, inflicting severe and dangerous wounds on her, which resulted in almost immediate death. This suit resulted.

As stated above, the accident occurred at about 10:30 P. M. on May 9, 1939, in Port Arthur, Jefferson County, Texas. Mrs. Friedman was a widow, and the owner and driver of the car. The other parties in the car were her guests. October 14, 1939, Mrs. Friedman married Mr. Seltzer and moved to Dallas, Texas. This suit was brought under Article 6701b, Vernon's Annotated Civil Statutes of Texas, known as the guest statute. It reads:

"Article 6701b, Sec. 1. No person transported over the public highways of this State by the owner or operator of a motor vehicle as his guest without payment for such transportation, shall have a cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others."

"Sec. 2. This Act shall not relieve a public carrier or any owner or operator of a motor vehicle while the same is being demonstrated to a prospective purchaser, of responsibility for any injuries sustained by a passenger being transported by such public carrier, or by such owner or operator."

There is no contention that the accident was intentionally caused. The contention is that Mrs. Friedman in her driving of the automobile was heedless and reckless in the management of same. That her driving the car straight into the ditch when the same was plainly to be seen by the car lights, and nothing to distract her attention, and this in the face of the warning given her by Mr. Mims that she was going to land in the ditch, were acts of gross negligence on the part of Mrs. Friedman. When the car was within a few feet of the ditch, Mr. Mims said to her, "Mrs. Friedman, be careful, you are going to run into the ditch." Mrs. Friedman testified that when Mr. Mims told her that she was going to run into the ditch, that she became excited and lost control of the car and it ran into the ditch, contacted the guy wire and rebounded. She was running very slow at the time, only about ten miles per hour. All the evidence is that Mrs. Friedman "had been driving very carefully." Mr. Mims testified that at the time the car passed over the railway track, which was within some fifteen or twenty feet of the ditch, the car "was going very slowly— slow enough that I could have jumped out and closed the door easily, without any effort at all." They were all good friends and neighbors. Mrs. Friedman herself received severe injuries. Her last words, while she was on the stand testifying, were: "I would rather it would have happened to me than Mr. Mims' wife."

We do not think there is any evidence in the record to indicate either a heedless or reckless operation of the car by Mrs. Friedman. The fact that she became alarmed and lost control of the car when Mr. Mims told her that she was about to run into the ditch does not indicate heedlessness or recklessness. It was sudden fright, or loss of ability to think clearly. The law is well settled that momentary thoughtlessness, inadvertence, or error of judgment does not constitute "heedlessness or reckless disregard of the rights of others" within the meaning of our guest statute. For appellant to have been entitled to recover, he must have shown that Mrs. Friedman was guilty of gross negligence in the operation of her car. Gross negligence is that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the rights or welfare of the person or persons to be affected by it. Texas Pacific Coal & Oil Co. v. Robertson, 125 Tex. 4, 79 S. W.2d 830, 98 A.L.R. 262. Under the facts of this case Mrs. Friedman was not guilty

of gross negligence as that term is defined in our jurisprudence. Pfeiffer v. Green, Tex.Civ.App., 102 S.W.2d 1077; Glassman v. Feldman, Tex.Civ.App., 106 S.W.2d 721; Napier v. Mooneyham, Tex.Civ.App., 94 S.W.2d 564; Hamilton v. Perry, Tex.Civ. App., 109 S.W.2d 1142; Linn v. Nored, Tex.Civ.App., 133 S.W.2d 234.

The judgment is affirmed.